**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. ABDEL-ILAH ELMARDOUDI, Defendant. | No. 06-CR-0112-LRR **ORDER** |

_____

*TABLE OF CONTENTS*

*I.   INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.  RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . . *2*

    *A.   District of Minnesota* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

    *B.   Eastern District of Michigan* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

    *C.   Northern District of Iowa* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
        *1.   The original case* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
        *2.   The instant case* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*

*III. ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*

    *A.   Statute of Limitations* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
        *1.   The parties' arguments* . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
        *2.   Legal analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*

    *B.   Pre-Indictment Delay* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
        *1.   The parties' arguments* . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
        *2.   Legal analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*

*IV.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*

# I. INTRODUCTION

The matter before the court is Defendant Abdel-Ilah Elmardoudi's Motion to Dismiss (docket no. 22).

# II. RELEVANT PROCEDURAL HISTORY

Defendant was indicted by a grand jury in the instant case in the Northern District of Iowa, but he was also charged as a federal defendant in the District of Minnesota and the Eastern District of Michigan during overlapping time periods. Because these three cases are intertwined, the court shall set forth the relevant procedural history in each district.[1]

## A. *District of Minnesota*[2]

On February 7, 2001, Defendant was charged in a complaint in the United States District Court for the District of Minnesota. On that date, Defendant appeared in open court and he was temporarily detained. On February 9, 2001, the court ordered Defendant's bond set at $25,000. The court also required Defendant to go to a half-way house if he posted the bond. On February 12, 2001, he posted a $25,000 appearance bond and was released to the half-way house.

On March 6, 2001, Defendant was charged in a three-count indictment. On April 4, 2001, Defendant was arraigned and pled not guilty. On April 19, 2001, Defendant walked away from the half-way house. On April 20, 2001, the court issued a bench warrant for Defendant's arrest.

On November 4, 2002, the bench warrant was executed and returned. Defendant has been in federal custody continuously since November 4, 2002.

---

[1] The court relies upon the docket sheets from each district, *see* Gov't Exs. 1 & 2, as well as published cases and public filings.

[2] Defendant is a named defendant in two different criminal cases in the District of Minnesota: No. 01-CR-00052-JRT-SRN-1 and No. 06-CR-00262-JRT-SRN-1.

On August 10, 2006, a complaint was filed against Defendant under a separate case number in the District of Minnesota. *See United States v. Elmardoudi*, No. 06-CR-00262-JRT-SRN-1 (D. Minn. 2006). On August 24, 2006, Defendant's two cases in the District of Minnesota were combined under case number 06-CR-00262-JRT-SRN-1.

On August 29, 2006, Defendant pled guilty to four federal crimes. On September 25, 2006, he was sentenced to four concurrent sentences of fifty-one months of imprisonment and three years of supervised release. *Id.* at docket nos. 32 & 37.[3]

### B. Eastern District of Michigan

On November 15, 2002, Defendant appeared in the Eastern District of Michigan and was arraigned on an indictment that had been returned on April 3, 2002.

On June 3, 2003, Defendant was convicted of conspiracy to provide material support and resources to terrorists and conspiracy to engage in document fraud. *See* Gov't Ex. 1; *United States v. Karim Koubriti*, 336 F. Supp. 2d 676, 676 (E.D. Mich. 2004). On September 2, 2004, due to the government's conceded violation of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), the district court dismissed the terrorism conviction and granted a new trial on the document fraud count. *Koubriti*, 336 F. Supp. 2d at 676-78. On January 18, 2005, the remaining count against Defendant was dismissed.

### C. Northern District of Iowa

#### 1. The original case

On December 7, 2001, Defendant was charged in a criminal complaint in the Northern District of Iowa under his alleged alias "George LaBibe." *See United States v. George LaBibe a/k/a Jean-Pierre Tardelli a/k/a Hussein Mohsen Safieddine and Brahim*

---

[3] The court notes that there is a two and one-half year gap in the docket sheet for case number 01-CR-52-JRT-SRN-1. *See* Gov't Ex. 2. It shows that the bench warrant was returned on November 4, 2002, but the next entry is not until April 4, 2005, when an attorney was appointed to represent Defendant. *See id.* at docket nos. 37 & 38.

3

*Sidi a/k/a Rauf Rizvi*, No. 01-MJ-0092-JAJ (N.D. Iowa 2001). On August 17, 2006, the arrest warrant for George LaBibe was returned unexecuted due to the Indictment in the instant case.

### 2. *The instant case*

On August 16, 2006, Defendant was charged in the Northern District of Iowa in a two-count Indictment. Count I charges Defendant with conspiring, between about June and September of 2001, to commit various offenses involving the making and use of false government identification documents for foreign nationals residing in the United States, in violation of 18 U.S.C. § 371. Count II charges Defendant with, on or about August 30, 2001, using a falsely obtained Social Security number with intent to deceive for the purpose of obtaining a State of Iowa identification card and to obtain a bank account at the Marquette Bank in Cedar Rapids, Iowa, in violation of 42 U.S.C. § 408(a)(7)(A).

On November 2, 2006, Defendant appeared before a United States magistrate judge for a combined hearing on his initial appearance, arraignment and detention.

On November 30, 2006, Defendant filed the instant Motion to Dismiss. On December 12, 2006, the government filed a resistance ("Resistance"). The court finds the matter fully submitted and ready for decision.[4]

---

[4] In its discretion, the court decided not to hold a hearing on the Motion. *See United States v. Kelley*, 152 F.3d 881, 885 (8th Cir. 1998) ("Whether to hold an evidentiary hearing and whether to grant a pre-trial motion to dismiss an indictment are matters within the trial court's discretion.").

## III. ANALYSIS

In his Motion to Dismiss, Defendant alleges that the Indictment should be dismissed for two reasons: (1) the Indictment is barred by the statute of limitations, and (2) the pre-indictment delay is prejudicial.[5] The court will address, in turn, Defendant's two grounds for dismissal.

### A. Statute of Limitations

Defendant's first claim is that Count I of the Indictment violates the five-year statute of limitations.

#### 1. The parties' arguments

Defendant argues that "any events occurring prior to August 16, 2001, should be barred by the statute of limitations." He argues that each time one of the alleged "numerous attempts to use a false name or false identification to attempt to obtain anything of value" ended, the statute of limitations began to run for that offense. In other words, he argues that each overt act alleged in Count I of the Indictment should be treated independently for statute of limitation purposes.

The government responds that the overt acts must be treated as one act. It argues that the limitations period commences when the last of the overt acts occurs or when the conspiracy ends. The government argues that, because the last overt act was committed in September of 2001, the August 16, 2006 Indictment is not time-barred.

---

[5] Defendant argues throughout his Motion to Dismiss and memorandum that the "indictment" should be dismissed. The only logical reading of Defendant's argument is that he believes the conspiracy count, Count I of the Indictment, is barred by the statute of limitations. The court shall focus its discussion of the statute of limitations on Count I. However, in the event that Defendant intended to argue that Count I and Count II are barred by the statute of limitations, the court finds that Count II is in no way barred by the statute of limitations.

### 2. Legal analysis

The statute of limitations for non-capital offenses, like the ones charged against Defendant, is five years. *See* 18 U.S.C. § 3282(a) ("[N]o person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."). "A statute of limitations bar is generally considered 'capable of determination without the trial of the general issue' and may properly be raised before trial." *United States v. Grimmett*, 150 F.3d 958, 961 (8th Cir. 1998) (quoting Fed. R. Crim. P. 12(b) advisory committee's notes).

"In a conspiracy charge, the limitations period begins to run from the occurrence of the last overt act committed in furtherance of the conspiracy that is set forth in the indictment." *United States v. Dolan*, 120 F.3d 856, 864 (8th Cir. 1997). The Indictment in this case was returned on August 16, 2006. Therefore, to satisfy the statute of limitations, Count I must allege at least one overt act that occurred on or after August 16, 2001. *Id.* Count I contains numerous allegations of overt acts occurring after that date. For example, paragraphs 18 to 23 allege that overt acts occurred on August 30, 2001; paragraphs 24 and 25 allege that overt acts occurred on August 31, 2001; paragraphs 26 and 27 allege that overt acts occurred on September 1, 2001; and paragraphs 28 and 29 allege that overt acts occurred on September 14, 2001. As such, Count I of the Indictment is not time barred under 18 U.S.C. § 3282.

The court shall deny Defendant's Motion to Dismiss insofar as he argues that Count I and Count II of the Indictment are barred by the applicable statute of limitations.

### B. Pre-Indictment Delay

Defendant's second claim in his Motion to Dismiss is that the Indictment should be dismissed due to pre-indictment delay.

### 1. The parties' arguments

Defendant argues that the government had all relevant information about the alleged offenses in its possession by December 7, 2001, yet waited until August of 2006 to seek the Indictment. Defendant argues that he is prejudiced because Brahim Sidi is an important defense witness who is no longer available because the government deported him.[6] Defendant contends that Sidi provided "exculpatory testimony" during the Michigan case and that Sidi would provide exculpatory testimony in the instant case if Defendant were to call him to testify.

In response, the government argues that there has been no violation of due process because Defendant cannot show (1) that the delay resulted in actual and substantial prejudice to the defense or (2) that the government intentionally delayed the indictment either to gain a tactical advantage or to harass him. To show its rationale for the delay, the government argues that much of the delay is attributable to the global plea negotiations involving Defendant's cases in Minnesota, Michigan and Iowa. The government argues that "coordination among the respective interested districts began shortly after [November 15, 2002,] when Defendant was brought to Michigan." It further provides that the concrete negotiations involving written plea agreements took place between September of 2004 and January of 2006.

---

[6] On December 7, 2001, Sidi was charged in a criminal complaint in the Northern District of Iowa. *See generally United States v. Brahim Sidi*, 02-CR-0015-EJM (N.D. Iowa 2001). On March 8, 2002, he was charged in a one-count indictment. *Id.* On May 31, 2002, Sidi pled guilty to the charge of conspiring to defraud the United States by obtaining false Social Security account numbers and cards, in violation of 18 U.S.C. § 371. *Id.* On August 2, 2002, Sidi was sentenced to time served, which totaled 212 days of imprisonment. *Id.*

*2. Legal analysis*

"The Fifth Amendment's due process clause prohibits unreasonable pre-indictment delay." *United States v. Sprouts*, 282 F.3d 1037, 1041 (8th Cir. 2002) (citing *United States v. Sturdy*, 207 F.3d 448, 451-52 (8th Cir. 2000)).

> [D]efendants claiming a due process violation for pre-indictment delay must carry the burden of proof on two separate elements. The defendant must establish that: (1) the delay resulted in actual and substantial prejudice to the presentation of his defense; and (2) the government intentionally delayed his indictment either to gain a tactical advantage or to harass him. [*Sturdy,* 207 F.3d at 452]; *see also United States v. Grap,* 368 F.3d 824, 829 (8th Cir. 2004); *Sprouts,* 282 F.3d at 1041.

*United States v. Jackson*, 446 F.3d 847, 849-50 (8th Cir. 2006) (footnote omitted). If Defendant is unable to establish actual prejudice, the court "need not assess the government's rationale for the delay." *Sprouts*, 282 F.3d at 1041.

Defendant must first show that the pre-indictment delay "resulted in actual and substantial prejudice to the presentation of his defense." *Jackson*, 446 F.3d at 849.

> To prove actual prejudice, [Defendant] must identify witnesses or documents lost during the period of delay, and not merely make speculative or conclusory claims of possible prejudice caused by the passage of time. [*Sturdy*, 207 F.3d at 452]. [Defendant] also has the burden of showing that the lost testimony or information was not available through other means. *Id.*

*Sprouts*, 282 F.3d at 1041; *see also United States v. Bartlett*, 794 F.2d 1285, 1289 (8th Cir. 1986) (requiring that "a defendant must specifically identify witnesses or documents lost during delay properly attributable to the government" and show "that the missing testimony or information is not available through substitute sources"). The Eighth Circuit Court of Appeals has noted that, "as the delay increases, the specificity with which

8

prejudice must appear, diminishes." *United States v. Naftalin*, 534 F.2d 770, 773 (8th Cir. 1976).

Here, there was just over a fifty-six month delay between the time the government had acquired all of the information to support the indictment (December 7, 2001) and the time the government filed the Indictment (August 16, 2006). There was a five-year delay between the time of the alleged offenses and the time of the Indictment. The court acknowledges that these numbers are on the outer-edge of an acceptable passage of time. *United States v. Barket*, 530 F.2d 189, 192 (8th Cir. 1976) (upholding the district court's finding that a forty-seven-month delay caused substantial prejudice to a defendant where "six material witnesses had died and others had faded memories of events crucial to [the defendant's] defense"). *But see United States v. McDougal*, 133 F.3d 1110, 1113 (8th Cir. 1998) (affirming the district court's refusal to dismiss an indictment where there was over nine years of delay).

However, Defendant has not met his burden of proving actual prejudice. He claims only that Sidi provided "exculpatory testimony in the prosecution in the Eastern District of Michigan" and Sidi is no longer available to testify because he was deported and "is believed to be in Morocco." Defendant has not shown how his ability to defend himself has been actually prejudiced by this delay because he has not shown the substance of the "exculpatory testimony" by Sidi or described which elements of the offenses would be impacted by the testimony. *See Bartlett*, 794 F.2d at 1289-90 ("The defendant also must relate the substance of the testimony which would be offered by the missing witnesses . . . in sufficient detail to permit a court to assess accurately whether the information is material to the accused's defense."). He also has failed to show that the testimony is "not available through other means." *Sprouts*, 282 F.3d at 1041 (citing *Sturdy*, 207 F.3d at 452). If Sidi testified in the Michigan trial against Defendant, the transcript of his testimony would likely be admissible under Federal Rule of Evidence 804(b)(1) in the instant case. *See*

9

Fed. R. Evid. 804(b)(1) (providing a hearsay exception where the declarant is unavailable and the party against whom former testimony is offered had an opportunity and a similar motive to examine or cross-examine the declarant).

Therefore, despite the delay between the dates that Defendant allegedly committed the offenses in the Indictment and the date that the government filed the Indictment, the court finds that Defendant has not shown actual and substantial prejudice. Because he has not established actual and substantial prejudice, the court need not assess the reason for the delay. *See Sprouts*, 282 F.3d at 1041 ("If the defendant fails to establish actual prejudice, we need not assess the government's rationale for the delay." (citing *Sturdy*, 207 F.3d at 452)); *McDougal*, 133 F.3d at 1113 ("To show preindictment delay violated the Due Process Clause, a defendant must first show the delay actually and substantially prejudiced the defense."). Nonetheless, the court concludes that the government's explanation for the delay is compelling. Because Defendant has not been denied his right to Fifth Amendment due process, his Motion to Dismiss shall be denied.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED:**

(1) Defendant Abdel-Ilah Elmardoudi's Motion to Dismiss (docket no. 22) is **DENIED**;

(2) The trial schedule established in the court's prior orders (docket nos. 16 & 20) remains in effect; and

(3) The period between the filing of Defendant's Motion to Dismiss and this Order is excluded from calculation under the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(F) (excluding delay resulting from the filing of any pretrial motion through the prompt disposition of the motion); 18 U.S.C. § 3161(h)(1)(J) (excluding "delay reasonably attributable to any period, not

to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court").

**IT IS SO ORDERED.**

**DATED** this 22nd day of January, 2007.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA