# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

ABDEL-ILAH ELMARDOUDI,

        Defendant.

No. 06-CR-112-LRR

**ORDER ON DEFENDANT'S
RULE 104 BRIEF**

_____

## *TABLE OF CONTENTS*

*I.*     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*    *RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*   *POSITIONS OF THE PARTIES* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
     *A.*     *Defendant's Arguments*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
     *B.*     *Government's Arguments*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*

*IV.*   *ANALYSIS*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
     *A.*     *General Rules* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
     *B.*     *Opinion Testimony Under Rule 608(a)* . . . . . . . . . . . . . . . . . . . . . *7*
     *C.*     *Specific Instances of Conduct Under Rule 608(b)* . . . . . . . . . . . . . *9*
     *D.*     *Alternative Holding:  Rule 403* . . . . . . . . . . . . . . . . . . . . . . . . *11*

*V.*    *CONCLUSION*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

## I. INTRODUCTION

The matter before the court is Defendant Abdel-Ilah Elmardoudi's Rule 104 Brief ("Motion") (docket no. 56).[1]

## II. RELEVANT PROCEDURAL HISTORY

The court's January 22, 2007 order sets forth the relevant procedural history of this case, as well as criminal cases involving Defendant in the United States District Court for the District of Minnesota, the United States District Court for the Eastern District of Michigan ("Michigan Proceedings"), and a prior case in this court. *See* Order (docket no. 26), at 1-4. The court shall not reiterate this procedural history herein.

On June 7, 2007, Defendant filed the Motion. On June 14, 2007, the government filed a resistance. In connection with its resistance, the government provided the court with the transcript and video recording of the pre-trial deposition of Youssef Hmimssa ("Hmimssa Deposition"), which took place on May 15, 2007, and May 21, 2007. On June 25, 2007, the court held an evidentiary hearing ("Hearing") on the Motion. On June 26, 2007, Defendant provided the court a copy of the sentencing transcript in *United States v. Youssef Hmimssa*, Criminal Action No. 01-CR-80778 (E.D. Mich. Sept. 1, 2005) (Rosen, J.) ("Hmimssa Sentencing Transcript").

Defendant was personally present at the Hearing. He was represented by Attorney Christopher A. Clausen. Assistant United States Attorney Kandice A. Wilcox represented the government. The court finds the matter fully submitted and ready for decision.

---

[1] Defendant violated the Local Rules by failing to provide citations to legal authorities. *See* LCrR 47.1.a (providing that "Local Rule 7.1 governs motion procedure in criminal cases"); LR 7.1.b.3 ("A motion must contain citations to all statutes or rules under which the motion is being made."). The court, however, shall not consider defense counsel's violation of the Local Rules when considering the merits of the Motion.

### III. POSITIONS OF THE PARTIES

#### A. Defendant's Arguments

In Defendant's Motion, he seeks a pretrial ruling, pursuant to Federal Rule of Evidence 104(a),[2] regarding the admissibility of testimony from three proposed witnesses: (1) The Honorable Gerald E. Rosen, United States District Court Judge for the Eastern District of Michigan ("Judge Rosen"), (2) United States Attorney Craig S. Morford ("USA Morford")[3] and (3) Attorney William W. Swor ("Attorney Swor"). All three proposed witnesses were involved in the Michigan Proceedings. *See generally United States v. Koubriti*, 336 F. Supp. 2d 676 (E.D. Mich. 2004) (Rosen, J.) (holding that the government's failure to produce exculpatory materials required dismissal of a terrorism count and new trial on a document fraud count). Defendant argues that the testimony of each of these witnesses is necessary to impeach the testimony of government witness Youssef Hmimssa ("Hmimssa"). He also claims that disallowing him from calling these witnesses will "deprive him of his right to introduce relevant testimony and to his right to a fair trial on the charges pending against him."

---

[2] Federal Rule of Evidence 104(a) provides, in part: "Preliminary questions concerning the qualification of a person to be a witness . . . or the admissibility of evidence shall be determined by the court," subject to relevancy considerations. Fed. R. Evid. 104(a). "Matters subject to Rule 104(a) should be established by a preponderance of proof." *United States v. Martinez*, 3 F.3d 1191, 1196 n.10 (8th Cir. 1993) (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)).

[3] Defendant refers to USA Morford as "Mr. Morford" and "Craig Morford." The court takes judicial notice of the fact that, on September 29, 2006, USA Morford was appointed the interim United States Attorney for the Middle District of Tennessee. USA Morford's knowledge of Hmimssa derives from his appointment as a special prosecutor in 2004, while he was an Assistant United States Attorney ("AUSA") in the Northern District of Ohio. *See Koubriti*, 336 F. Supp. 2d at 678 ("[T]he court ordered the Government to conduct a thorough review of the case . . . . [T]he United States Attorney General . . . appointed a Special Attorney, Craig S. Morford, from outside the Detroit U.S. Attorney's office to lead the Government's review.").

3

First, Defendant argues that he should be permitted to subpoena Judge Rosen because, Judge Rosen determined that Hmimssa committed perjury in the Michigan Proceedings. Judge Rosen determined that Hmimssa had lied twice: (1) during Hmimssa's trial testimony and (2) when responding to Judge Rosen's direct questions about Hmimssa's communications with inmate Butch Jones. Defendant argues that, because Hmimssa continued to lie during the Hmimssa Deposition in the instant case, Judge Rosen "is the best qualified person to testify in connection with the past history of [Hmimssa] lying under oath."

Second, Defendant seeks to subpoena USA Morford, the attorney "assigned to investigate and evaluate the case in Michigan." Defendant argues that USA Morford discovered exculpatory evidence, namely, evidence that Hmimssa had changed his story several times. USA Morford was also the attorney who conceded error and recommended the dismissal of one of the counts in the Michigan Proceedings.

Finally, Defendant seeks to subpoena Attorney Swor, because Attorney Swor represented Defendant during the Michigan Proceedings and can testify that Hmimssa lied several times under oath.

## B. Government's Arguments

In response, the government argues that the expected testimony of each of the three witnesses is irrelevant and substantially more prejudicial than probative. The government argues that, although the instant case and the Michigan Proceedings overlap factually, the terrorism-related charges in the Michigan Proceedings were much different than the charges in the instant case, that is, charges involving identification document fraud. The government argues that the testimony sought in the Motion should not be permitted, because extrinsic evidence is inadmissible under Federal Rule of Evidence 608(b) to prove that specific bad acts occurred. Further, the government argues that allowing the

4

testimony from the three witnesses would likely result in mini-trials on peripherally related matters.

The government additionally argues that, although Hmimssa participated in the same conspiracy as Defendant, the testimony of Hmimssa is but one component of the government's evidence against Defendant. It alleges that, when Hmimssa's residence and storage locker were searched in 2001, officers found documents pertaining to Defendant's aliases, Defendant's family members and Defendant's efforts to obtain false identification documents. Further, it alleges that, when Defendant was arrested in North Carolina in November of 2002, he possessed several identification documents and made several admissions to authorities, which the government intends to introduce against him during trial. The government argues that several of Defendant's "customers" to the Social Security fraud scheme will testify that Defendant and Hmimssa assisted them in obtaining fraudulent Social Security cards while they were in Iowa. The government, therefore, does not consider Hmimssa to be its "key witness."

Finally, the government cites Federal Rule of Evidence 403 and asks the court to refrain from issuing the trial subpoenas, because the testimony of the three witnesses would be substantially more prejudicial than probative and would confuse the jury.

## IV. ANALYSIS

### A. General Rules

Generally, any individual who is competent to be a witness may be compelled to testify as to facts within his or her knowledge that are relevant to the trial. *See* Fed. R. Evid. 601 & 602. There are, however, limits to this rule. *See, e.g.*, Fed. R. Evid. 605 (disqualifying the presiding judge from testifying as a witness). Courts have "recognized an exemption from compulsory testimony when necessary to protect the integrity and individual responsibility of governmental officials whose duties involve the exercise of judicial and quasi-judicial authority." *Gary W. v. State of La., Dep't of Health & Human*

5

*Res.*, 861 F.2d 1366, 1368 (5th Cir. 1988) (quotation omitted). This "mental processes rule" has been used to quash subpoenas that would require a judge to be a witness. *See United States v. Morgan*, 313 U.S. 409, 422 (1941) (recognizing the "mental processes rule" and determining that an agency official, namely, the Secretary of Agriculture, should not have been deposed or called as a trial witness); *Gary W.*, 861 F.2d at 1369 (citing *United States v. Dowdy*, 440 F. Supp. 894 (W.D. Va. 1977), a case in which the trial court quashed a trial subpoena which would have required a judge to appear as a witness); *see also United States v. Abell*, 552 F. Supp. 316, 325 n.2 (D. Me. 1982) ("While a judge may be competent to testify as to a cause not on trial before him, judges are under no obligation to divulge the reasons that motivated them in their official acts; the mental processes employed in formulating the decision may not be probed." (quotation omitted)).

Courts do not generally encourage judges, AUSAs and defense attorneys to testify in criminal trials. *See generally United States v. Krenzelok*, 874 F.2d 480, 482 (7th Cir. 1989) ("It is unusual for a federal judge to appear, directly or indirectly, as a witness. There are exceptions: a case of criminal contempt, for example, or a case in which a judge is called as a character witness for the defendant."); *United States v. Armedo-Sarmiento*, 545 F.2d 785, 793 (2d Cir. 1977) ("While we do not encourage testimony by any member of a United States Attorney's staff, we would not go so far as to disqualify such person as a witness in a case in which he plays no other role."). *Cf. United States v. Cerone*, 452 F.2d 274, 288 (7th Cir. 1972) (allowing the testimony of a United States Attorney and stating that "the mere fact that a witness holds an office of public trust should [not] disqualify him as a witness if he would otherwise be able to offer relevant, competent and material evidence as to any issue in a trial"). Although there is not an express constitutional immunity protecting Article III judges from testifying in a criminal case, "a strong prudential interest exists in favor of protecting the court and its judges from harassment and interference with the performance of their duties." *United States v.*

6

*Ianniello*, 740 F. Supp. 171, 189 (S.D.N.Y. 1990); *see also United States v. Roebuck*, 271 F. Supp. 2d 712, 721 (D.V.I. 2003) ("'While a judge enjoys no privilege from being subpoenaed as a witness, it is imperative when he is called to testify as to action taken in his judicial capacity, to carefully scrutinize the grounds set forth for requiring his testimony.'" (quoting *Dowdy*, 440 F. Supp. at 896)); *Hensley v. Alcon Labs., Inc.*, 197 F. Supp. 2d 548, 550 (S.D. W.Va. 2002) ("Absent a showing of extraordinary need, a judge may not be compelled to testify about matters observed as the consequence of the performance of his official duties. This protection allows judges to vigorously perform their duties without fear of later having to provide explanatory or observational testimony.").

The court shall also take special care to scrutinize the grounds Defendant sets forth for subpoenaing USA Morford and Attorney Swor, because the subject of their proposed testimony derives from the work that they undertook as officers of a federal district court.

### B.  Opinion Testimony Under Rule 608(a)

A witness's credibility may be attacked or supported "by evidence in the form of opinion or reputation." Fed. R. Evid. 608(a). When attacking a witness's credibility under Rule 608(a), "the evidence may refer only to character for . . . untruthfulness." *Id.* at 608(a)(1). "Admissibility of opinion testimony by lay witnesses is further limited by Rule 701 . . . ." *United States v. Turning Bear*, 357 F.3d 730, 734 (8th Cir. 2004). Rule 701 provides:

> If the witness is not testifying as an expert, the witness'[s]
> testimony in the form of opinions or inferences is limited to
> those opinions or inferences which are (a) rationally based on
> the perception of the witness, (b) helpful to a clear
> understanding of the witness'[s] testimony or the determination
> of a fact in issue, and (c) not based on scientific, technical, or
> other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

The court may find that a witness is not qualified to give opinion testimony. In *United States v. Cortez*, 935 F.2d 135 (8th Cir. 1991), the Eighth Circuit Court of Appeals held that the district court abused its discretion when it admitted the opinion testimony of two law enforcement officers, where the officers first met the witness after the witness contacted the officers and provided inculpatory information about the defendant. 935 F.2d at 139. The Eighth Circuit Court of Appeals stated:

> Neither [officer] participated in the investigation of [the government witness]. Neither participated in the investigation of [the defendant]. Neither had known [the government witness] until he came forward with his information about his jail-house conversations with [the defendant]. Neither had spent even a single full day with [the government witness]. Their knowledge based on these minimal contacts with [the government witness] is insufficient to provide a basis upon which either [officer] could form an opinion concerning [the government witness]'s character for truthfulness. Their testimony does not even speak to his general character for truthfulness; instead, it merely expresses their belief in the story he told them. We therefore hold that the District Court abused its discretion by allowing into evidence the opinions of [the officers] as to [the government witness]'s truthfulness.

*Id.* at 139-40.

The court finds that Defendant is unable to lay an adequate foundation, that is, he has not "demonstrat[ed] that the opinion witness[es] know[] the relevant witness well enough to have formed an opinion." *Turning Bear*, 357 F.3d at 734. Although the Michigan Proceedings were long and extremely complicated, a trial judge, an AUSA and a defense attorney do not, under most circumstances, come to know a cooperating witness in the way that is required under Rules 608(a) and 701. Defendant has failed to present evidence which qualifies his proposed witnesses to give opinion testimony about Hmimssa's untruthfulness.

8

The court holds that Judge Rosen, USA Morford and Attorney Swor are not appropriate opinion witnesses because they had only minimal contacts with Hmimssa in the context of a criminal investigation and proceeding. *Compare United States v. Dotson*, 799 F.2d 189, 192-93 (5th Cir. 1986) (cited in *Cortez*, 935 F.2d at 139) (holding that opinion testimony from three government agents that the defendant and his witnesses were not credible was inadmissible under Rule 608(a) and 701 due to a lack of foundation because the agents' only basis for their opinions was due to their involvement in a criminal investigation of the defendant), *with Turning Bear*, 357 F.3d at 734 (finding that the defendant laid a sufficient foundation for opinion testimony where the proposed witness had lived with the person who the defendant sought to impeach for a "four-to-six-month period").

Accordingly, the court holds the testimony of the three proposed witnesses is not admissible under Rule 608(a).

### C. Specific Instances of Conduct Under Rule 608(b)

Federal Rules of Evidence 608(b) permits evidence of "specific instances of the conduct of a witness for the purpose of attacking . . . the witness' character for truthfulness," but such specific instances "may not be proved by extrinsic evidence." Fed. R. Evid. 608(b); *see also United States v. Beal*, 430 F.3d 950, 956 (8th Cir. 2005) ("[Rule 608(b)] permits the court in its discretion to allow cross examination of witnesses regarding specific instances of a witness's own conduct if the past experiences are probative of a character for untruthfulness."). "Rule 608(b) applies when a party attempts to introduce evidence of prior conduct of a witness that standing alone tends to attack or support the witness's general character for truthfulness." *United States v. Bolzer*, 367 F.3d 1032, 1038 (8th Cir. 2004). The Eighth Circuit Court of Appeals has explained that

> [Rule 608(b)] gives the court wide discretion to allow
> questioning during cross-examination on specific bad acts not
> resulting in the conviction of a felony if those acts concern the

witness's credibility. However, in order to avoid holding "mini-trials on peripherally related or irrelevant matters," Rule 608(b) "forbids the use of extrinsic evidence to prove that the specific bad acts occurred." *United States v. Martz,* 964 F.2d 787, 789 (8th Cir.), *cert. denied,* 506 U.S. 1038 (1992).

*United States v. LeCompte*, 108 F.3d 948, 951 (8th Cir. 1997).

In *United States v. Bolzer*, 367 F.3d 1032, 1037-38 (8th Cir. 2004), the defendant wanted to impeach a law enforcement agent who, at one point in his career, allegedly "us[ed] profanity to describe a judge during a conversation with [court employee, Kathy Hammond]." *Id.* at 1038. The defendant wanted to inform the jury of that specific instance of conduct by calling Kathy Hammond to testify about it. *Id.* The district court judge did not allow the defendant to call Kathy Hammond as a witness, citing Rules 608 and 613(b).[4] *Id.* The Eighth Circuit Court of Appeals determined that "[the defendant] clearly could not introduce the court employee's testimony for the purpose of establishing that [the agent] is generally a dishonest person or that he has a character for untruthfulness" under Rule 608(b). *Id.* It went on to hold that the district court did not abuse its discretion in refusing to admit the impeachment testimony, in part, because the defendant failed to show, pursuant to Rule 613(b), that the subject of the agent's prior inconsistent statement was material. *Id.* at 1038-39.

Like the district court in *Bolzer*, this court holds that Defendant cannot introduce the testimony of Judge Rosen, USA Morford or Attorney Swor for the purpose of establishing that Hmimssa is generally a dishonest person. Defendant may not call these

---

[4] Rule 613 provides for the examination of a witness based on the witness's prior statements. Fed. R. Evid. 613. It generally provides that "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible . . . ." *Id.* at 613(b).

10

witnesses to testify regarding Hmimssa's veracity based on the statements he made or failed to make during the Michigan Proceedings.  Such testimony would be extrinsic evidence, which is not permitted under Rule 608(b).[5]

During the Hmimssa Deposition, defense counsel took much time and care to cross-examine Hmimssa about specific instances of conduct.  Specifically, defense counsel asked Hmimssa about statements he made to Judge Rosen during the Michigan Proceedings, Judge Rosen's findings in the Michigan Proceedings, inmates Hmimssa spoke to while imprisoned in Michigan, Hmimssa's criminal history and the sentencing calculations in his federal case.  Defendant argues that Hmimssa lied during the Hmimssa Deposition because he stated that he received an obstruction of justice enhancement on his federal sentence due to bail-jumping, rather than due to perjury.  Despite Defendant's argument that Hmimssa lied when cross-examined, the court concludes that Rule 608(b) does not permit him to call witnesses to refute Hmimssa's statements.  Defendant must take Hmimssa's answer as its given "because Rule 608(b) precludes him from using extrinsic evidence to impeach the witness."  *United States v. Elliott*, 89 F.3d 1360, 1368 (8th Cir. 1996) (citing *United States v. Capozzi*, 883 F.2d 608, 615 (8th Cir. 1989)).

### D.  Alternative Holding:  Rule 403

Even if the court finds evidence to be admissible under Rule 608, it can exclude the evidence pursuant to Rule 403 if the probative value of the evidence "'is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of

---

[5] The court is also concerned that such evidence would be inadmissible hearsay evidence.  Defendant has not attempted to discuss the implications of the hearsay rules as to the judicial findings of fact in the Michigan Proceedings.  *See Sine*, 483 F.3d at 1004 (agreeing with the Courts of Appeals for the Fourth, Tenth and Eleventh Circuits, which have held that "judicial findings of facts are hearsay, inadmissible to prove the truth of the findings unless a specific hearsay exception exists").

11

cumulative evidence.'" *Beal*, 430 F.3d at 956 (quoting Fed. R. Evid. 403). Therefore, even if the court erred and the testimony of Judge Rosen, USA Morford or Attorney Swor is admissible under Rule 608, the court alternatively holds that it would exclude the testimony pursuant to Rule 403.

The danger is exceedingly great that the jury would be misled or confused by such testimony. Such testimony would invite the introduction of evidence on collateral issues; the parties would have to delve deeply into the facts in the Michigan Proceedings in order for the jury to understand the testimony of the witnesses. If even one of the three proposed witnesses were to testify at Defendant's trial, the issues involved in the Michigan Proceedings would become a trial within a trial, and such a diversion would be a waste time and confuse the jury.

There is also a danger that, if such witnesses were permitted to provide opinion testimony about Hmimssa's truthfulness, the jury will not be the ultimate finders of fact. *See United States v. Meads*, 479 F.3d 598, 602 (8th Cir. 2007) ("Credibility is always an issue for the jury to determine."). The danger that the jury's decision-making power will be taken away is particularly high with regard to the testimony of Judge Rosen. If the court admits evidence that Judge Rosen found Hmimssa committed perjury and was otherwise untruthful in the Michigan Proceedings, the evidence has the potential to "usurp the jury's role in assessing credibility." *Wilmington v. J.I. Case Co.*, 793 F.2d 909, 919 (8th Cir. 1986). The jurors will be "likely to defer to findings and determinations relevant to credibility made by an authoritative, professional factfinder rather than determine those issues for themselves." *United States v. Sine*, 483 F.3d 990, 1002 (9th Cir. 2007); *see also Jackson v. Bunge Corp.*, 40 F.3d 239, 246 (7th Cir. 1994) (affirming district court's decision to exclude an arbitrator's decision to forestall any "risk that the arbitrator's decision and rationale would be substituted for the jury's decision"); *Heaton v. Weitz Company, Inc.*, No. 05-CV-102-LRR, 2006 WL 3392922, *6 (N.D. Iowa Nov. 22, 2006)

12

(excluding evidence of a prior worker's compensation decision involving the defendant and stating that the risk of prejudice was heightened because the decision carried with it the imprimatur of the Deputy Iowa Worker's Compensation Commissioner, a quasi-judicial officer).

The court finds that the jury will gain little from the testimony of the three proposed witnesses that it cannot gain from Hmimssa's testimony and cross-examination.[6] The danger of jury confusion and potential to waste time substantially outweighs the probative value of the testimony of each of the three proposed witnesses. Accordingly, the court alternatively excludes the testimony of Judge Rosen, USA Morford and Attorney Swor pursuant to Rule 403.

### V. CONCLUSION

For the foregoing reasons, the court hereby ORDERS:

(1)    Defendant's Rule 104 Brief (docket no. 56) is **DENIED**;

(2)    The Clerk of Court is directed not to issue trial subpoenas for Judge Rosen, USA Morford and Attorney Swor; and

(3)    The period of time between the filing of Defendant's Motion and the filing of this order is excluded from calculation under the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(F) (excluding delay resulting from the filing of any pretrial motion through the conclusion of the hearing thereon); 18 U.S.C. § 3161(h)(1)(J) (excluding "delay reasonably attributable to any period, not

---

[6] Nothing in this order should be construed as a ruling as to whether Hmimssa may testify during trial via deposition or as to the admissibility of certain statements Hmimssa made during Hmimssa's Deposition.

13

to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court").

**IT IS SO ORDERED.**

**DATED** this 27th day of June, 2007.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

14