**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> ABDEL-ILAH ELMARDOUDI, <br><br> Defendant. | No. 06-CR-112-LRR <br><br> **ORDER ON DEFENDANT'S MOTION TO DISMISS ON DOUBLE JEOPARDY GROUNDS** |

_____

*TABLE OF CONTENTS*

I.    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

II.   *RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . *2*
     A.    *Summary in Prior Order* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
     B.    *Relevant Details of the Michigan Proceedings* . . . . . . . . . . . . . . . . . *2*
     C.    *The Instant Indictment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
     D.    *The Double Jeopardy Motion* . . . . . . . . . . . . . . . . . . . . . . . . . *6*

III.  *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
     A.    *Double Jeopardy Principles are Not Implicated* . . . . . . . . . . . . . . . *6*
     B.    *Alternative Holding: The Offenses are Not the "Same"* . . . . . . . . *10*

IV.  *DISPOSITION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*

## *I. INTRODUCTION*

The matter before the court is Defendant Abdul-ILA Elmardoudi's Motion to Dismiss for Violation of Double Jeopardy Clause of the Fifth Amendment and Request for Evidentiary Hearing ("Double Jeopardy Motion") (docket no. 57).

## II. RELEVANT PROCEDURAL HISTORY

### A. *Summary in Prior Order*

The court's January 22, 2007 order sets forth the relevant procedural history of this case, as well as criminal cases involving Defendant in the United States District Court for the District of Minnesota, the United States District Court for the Eastern District of Michigan ("Michigan Proceedings") and a prior case in this court. *See* Order (docket no. 26), at 1-4. The court shall not reiterate the entirety of this procedural history herein.

### B. *Relevant Details of the Michigan Proceedings*

On January 29, 2003, Defendant was charged as one of four defendants in a four-count Third Superseding Indictment in the United States District Court for the Eastern District of Michigan ("Michigan Indictment"). Defendant was charged in Counts 1 and 2. The Michigan Indictment also charged Karim Koubriti, Ahmed Hannan and Farouk Ali-Haimoud.[1]

Count 1 of the Michigan Indictment charged all four defendants with conspiracy to provide material support or resources to terrorists, in violation of 18 U.S.C. §§ 371, 956(b), 2332b and 2339A ("Terrorism Count"). The Terrorism Count charged that the offense lasted from "about February 1998" and continued through the "time of [the Michigan Indictment]," that is, January of 2003.[2] The nature of this alleged conspiracy

---

[1] An August 28, 2002 Second Superseding Indictment had charged these four defendants, as well as Youssef Hmimssa. *See* Gov't Ex. 1 (docket no. 65). Hmimssa's charges were severed because he agreed to cooperate with the government and testify against his co-conspirators. *United States v. Koubriti*, 305 F. Supp. 2d 723, 734 (E.D. Mich. 2003).

[2] Despite the language setting forth the time frame in the Terrorism Count, the court takes judicial notice of the fact that the first of the alleged overt acts occurred in October of 2000. *See Stutzka v. McCarville*, 420 F.3d 757, 761 n.2 (8th Cir. 2005) (addressing the court's ability to take judicial notice of public records). Moreover,
(continued…)

2

was to perform services and acquire items which would be used to engage in or support a holy war, or "global jihad." The conspiracy included recruitment and production of false identification documents. The scope of the conspiracy was wide. The co-conspirators were alleged to have planned "specific violent attacks," including ones in Turkey and Jordan; they were alleged to have conducted surveillance on landmarks in California and Nevada; they were alleged to have planned to send money and weapons to individuals in Algeria; and they received a wire transfer of money from an individual in Amsterdam. The conspiracy took place mainly in Detroit and Dearborn, Michigan, and Chicago, Illinois.

Count 2 of the Michigan Indictment charged the same four individuals with conspiracy to engage in fraud and misuse of visas, permits and other documents, in violation of 18 U.S.C. §§ 371, 1546(a) and 1546(b) ("Document Fraud Count"). The Document Fraud Count charged that the offense lasted "from in or about November, 2000, and continuing to on or about September 17, 2001." As for the nature and scope of the activity charged, the co-conspirators were alleged to have attempted to obtain false U.S. and foreign passports, false resident alien cards, false Social Security cards and false Michigan operators' licenses. They are alleged to have done so for several purposes, including to attempt to conceal their true identities, to assist others in entering the United States illegally and "to secure and maintain a mail repository in a name other than their own in order to disguise, hide or otherwise conceal the true identity of the actual individual to whom mail was directed." The events of the conspiracy were alleged to have taken place in Michigan and Illinois.

---

[2](…continued)
Defendant, Koubriti and Hannan were arrested and detained on September 17, 2001. *Koubriti*, 305 F. Supp. 2d at 724-25.

Defendant was eventually tried on the Michigan Indictment in the Michigan Proceedings. *See United States v. Koubriti*, 252 F. Supp. 2d 437, 439 (E.D. Mich. 2003); *see also United States v. Koubriti*, 305 F. Supp. 2d 723, 727 n.3 (E.D. Mich. 2003). On June 3, 2003, a jury found Defendant guilty of both the Terrorism Count and the Document Fraud Count. *See id.* at 736.[3] After the trial, the Honorable Gerald E. Rosen, United States District Court Judge for the Eastern District of Michigan ("Judge Rosen"), ordered that the government conduct an investigation into credible allegations that the government withheld exculpatory evidence in the Michigan Proceedings. *United States v. Koubriti*, 336 F. Supp. 2d 676, 678 (E.D. Mich. 2004). The government conducted the investigation and, in the end, confessed error, agreed to dismiss the Terrorism Count and concurred with Defendant's motion for a new trial as to the Document Fraud Count. *Id.* at 682. On September 2, 2004, Judge Rosen entered an order dismissing the Terrorism Count without prejudice and granting a new trial on the Document Fraud Count. *Id.* Eventually, the government dismissed the Document Fraud Count, as well. *See United States v. Koubriti*, 435 F. Supp. 2d 666, 670 & n.5 (E.D. Mich. 2006) (explaining that, on December 15, 2004, Koubriti was charged in a Fourth Superseding Indictment and the remaining count of the Third Superseding Indictment was dismissed).

### C. The Instant Indictment

Count 1 of the instant Indictment charges Defendant with Conspiracy to Commit Document Fraud, in violation of 18 U.S.C. §§ 371, 1001 and 1546(a), and 42 U.S.C. §§ 408(a)(6) and 408(a)(7)(A). It charges that the offense lasted "[b]etween about June, 2001, and September, 2001." Defendant is alleged to have conspired with "other persons," none of whom are named as co-defendants. The Indictment does, however,

---

[3] Ali-Haimoud was acquitted by the jury on all charges. *Koubriti*, 305 F. Supp. 2d at 736. Hannan was convicted of one count and Koubriti was convicted on two counts. *Id.*

allege that Defendant conspired with "B.S." and "Y.H."[4]  As for the nature and scope of the activity charged, the co-conspirators are alleged to have "devised a scheme to obtain false government identification documents for foreign nationals residing in the United States."  Indictment (docket no. 1), at 2, ¶ 1.  The co-conspirators are alleged to have offered their fraudulent document services to foreign nationals for a "lump sum fee." (*Id.*).  They are alleged to have used computers to produce the documents and leased mailboxes at commercial mailbox facilities in attempts to secure legitimate addresses for the receipt of the fraudulent documents.  The co-conspirators are alleged to have brought "[a]t least 20" foreign nationals to Iowa to help them obtain false Social Security numbers and cards using fraudulent I-94 documents.  (*Id.*).  The events of the conspiracy are alleged to have taken place in the Northern and Southern Districts of Iowa, primarily in Dubuque, Waterloo, Cedar Rapids and Iowa City.

Count 2 of the instant Indictment is not a conspiracy charge.  It charges the following:

> On about August 30, 2001, in the Northern District of Iowa, [Defendant], a/k/a "George Labibe," a/k/a "Jean-Pierre-Tardelli," a/k/a "Hussein Mohsen Safieddine," a/k/a "Abdullah," for the purpose of obtaining a thing of value and for other purposes, did willfully, knowingly, and with the intent to deceive, use social security account number XXX-XX-8421.  Said account number had been assigned by the Commissioner of Social Security to "Jean-Pierre Tardelli," on the basis of false information furnished to the Commissioner of Social Security.  Defendant used social security account number XXX-XX-8421 to apply for and receive a State of Iowa identification card, number XXX-XX-1493, in the name of "Jean-Pierre Tardelli" and to apply for a bank account at Marquette Bank in Cedar Rapids, Iowa.

---

[4]  The court and Defendant are well-aware that "B.S." refers to Brahim Sidi and "Y.H." refers to Hmimssa.  *See generally* Order (docket no. 26).

>This in violation of Title 42, United States Code, Section 408(a)(7)(A).

Indictment (docket no. 1), at 9.

### D. The Double Jeopardy Motion

On June 8, 2007, Defendant filed the Double Jeopardy Motion. On June 19, 2007, the government filed its resistance. (docket no. 65). On July 2, 2007, Defendant filed a supplement to the Double Jeopardy Motion. (docket no. 72). On July 3, 2007, the court held an evidentiary hearing ("Hearing") on the Double Jeopardy Motion and two other motions. Defendant introduced two affidavits (docket nos. 73 & 74) as evidence.[5] After the Hearing, the government filed a response to one of the affidavits. (docket no. 76). Defendant was personally present at the Hearing with his Attorney Christopher A. Clausen. Assistant United States Attorney Kandice A. Wilcox represented the government. The court finds the Double Jeopardy Motion to be fully submitted and ready for decision.

## III. ANALYSIS

Defendant argues that the charges in the instant Indictment violate the Double Jeopardy Clause, and he moves for dismissal of the Indictment.

### A. Double Jeopardy Principles are Not Implicated

The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy." U.S. Const. amend. V. In other words, it "protects a criminal defendant from repeated prosecutions for the same offense." *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982). This constitutional prohibition on successive prosecutions is not absolute. *See United States v. Curry*, 328 F.3d 970, 972 (8th Cir. 2003) ("The double jeopardy doctrine, however, does not prevent all retrials after jeopardy attaches." (quotation omitted)). "The Double Jeopardy Clause's general

---

[5] The affidavit by Defendant (docket no. 74) is neither signed nor dated.

prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction." *Lockhart v. Nelson*, 488 U.S. 33, 38 (1988); *cf. Burks v. United States*, 437 U.S. 1, 18 (1978) (determining that when a defendant's conviction is set aside due to insufficient evidence, double jeopardy bars retrial on the same charge). When a defendant is convicted but then files a successful new trial motion, the prohibition of the Double Jeopardy Clause is not triggered because the original jeopardy is not terminated. *See United States v. Wood*, 958 F.2d 963, 970 (10th Cir. 1992); *see also United States v. Arache*, 946 F.2d 129 (1st Cir. 1991) (holding that the Double Jeopardy Clause did not bar a retrial after the court granted the defendant's motion for a new trial where no finding of insufficient evidence had been made). The Eighth Circuit Court of Appeals recently explained that

> double jeopardy is triggered when either (1) a jury acquits a defendant or (2) makes a factual finding beyond a reasonable doubt that would be fatal to the government's case. The burden is 'on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding."

*United States v. Mitchell*, 476 F.3d 539, 544 (8th Cir. 2007) (quoting *Dowling v. United States*, 493 U.S. 342, 350 (1990)). Here, Defendant was not acquitted in the Michigan Proceedings, and Defendant has not shown that the jury made factual findings as to the Terrorism Count or the Document Fraud Count that would be fatal to the government's case on the instant Indictment. Therefore, Defendant's Double Jeopardy Motion shall be denied.

Defendant alternatively attempts to invoke the narrow exception created in *Oregon v. Kennedy*, 456 U.S. 667 (1982). Generally, when a defendant moves for a mistrial, the Double Jeopardy Clause is not a bar to a retrial. *Id.* at 673. In *Kennedy*, the Supreme Court carved out "a narrow exception" to that rule for situations where the conduct giving

7

rise to the mistrial was prosecutorial or judicial misconduct that was intended to provoke the defendant into moving for a mistrial. *Id.* at 673-74; *see also Curry*, 328 F.3d at 972 ("When a defendant moves for mistrial, the doctrine does not bar retrial unless the prosecutor intentionally engaged in conduct designed to provoke the defendant's motion."). In the Michigan Proceedings, there was no mistrial granted. The case proceeded to a jury verdict, and Defendant was convicted. Therefore, this is not a situation where the narrow exception of *Kennedy* is applicable.

Moreover, even if a mistrial had been granted in the Michigan Proceedings, in order for the exception in *Kennedy* to apply, "the governmental conduct in question" must have been "intended to 'goad' the defendant into moving for a mistrial." 456 U.S. at 676; *see also United States v. Beeks*, 266 F.3d 880, 882 (8th Cir. 2001) (per curiam) ("Absent intent to provoke a mistrial, a prosecutor's error in questioning a witness, improper remarks in a closing statement, and even extensive misconduct do not prevent reprosecution." (citations omitted)). Here, there is absolutely no evidence that the prosecutors in the Michigan Proceedings wanted anything but convictions. *See United States v. Oseni*, 996 F.2d 186, 188 (7th Cir. 1993) (Posner, J.) (discussing the requirement of intent in *Kennedy*, and stating that "unless [the prosecutor] is trying to abort the trial, his misconduct will not bar a retrial. It doesn't even matter that he knows that he is acting improperly, provided that his aim is to get a conviction. The only relevant intent is intent to terminate the trial, not intent to prevail at this trial by impermissible means."). The post-trial proceedings in the Michigan Proceedings make clear that the prosecutors were, if anything, over-zealous to obtain guilty verdicts from the jury and in no way intended to abort the trial. *See also Curry*, 328 F.3d at 973 (granting defendant's mid-trial motion for mistrial during the post-trial proceedings and allowing retrial despite a prosecutor's *Brady* violations and improper comments during closing arguments). Therefore, even if Defendant's trial in the Michigan Proceedings had ended on his motion for mistrial, he

8

cannot now establish that the prosecutors' misconduct was undertaken with the intent to provoke or "goad" a mistrial.

Defendant also cites *United States v. Wallach*, 979 F.2d 912, 916 (2d Cir. 1992), and argues that the exception in *Kennedy* can also apply "[i]n cases where the misconduct remain[s] hidden until after the verdict is returned . . . ." Motion (docket no. 57-1), at ¶ 11. Defendant misses the point in his citation to dicta in *Wallach*, a case that is, in any event, not controlling here. The Eighth Circuit Court of Appeals has not had the opportunity to extend the holding in *Kennedy* to post-verdict dismissals. However, the Tenth Circuit Court of Appeals aptly articulated why an extension of the exception in *Kennedy* is not warranted in cases involving post-verdict dismissals:

> [The d]efendants maintain, under the *Kennedy* exception for prosecutorial misconduct, their retrial would violate double jeopardy. [The d]efendants' reliance on *Kennedy* is misplaced, however, because no mistrial was declared in this case. The district court never granted [the d]efendants' motions for a mistrial. The case proceeded to the jury and guilty verdicts were returned. [The d]efendants did not obtain a mistrial, but instead succeeded in having the district court set aside the guilty verdicts. Although [the d]efendants attempt to characterize the district court's order setting aside the jury verdicts and granting a new trial as the functional equivalent of a mistrial, [the d]efendants miss a crucial distinction. The *Kennedy* prosecutorial misconduct exception is a narrow one, designed to protect the defendant's right to "have his trial completed before the first jury empaneled to try him." *Kennedy,* 456 U.S. at 673. Without this exception a prosecutor could intentionally provoke a defendant into requesting a mistrial and the defendant would then be prevented from later invoking a double jeopardy bar to his retrial. Such a result would render a defendant's "valued right to complete his trial before the first jury" a "hollow shell." *Id.* [The d]efendants, however, do not require such protection because without the declaration of a mistrial, they were not deprived of their "valued right" to have their case submitted

9

> to the first jury, and perhaps have the dispute end with an acquittal. For these reasons, we conclude that the mistrial exception for prosecutorial misconduct set forth in *Kennedy* simply does not apply to [the d]efendants.

*United States v. McAleer*, 138 F.3d 852, 855-56 (10th Cir. 1998). The court declines Defendant's invitation to extend *Kennedy*'s narrow exception. *See United States v. Davis*, 873 F.2d 900, 906 (6th Cir. 1989) (concluding that "[*Kennedy*] and its relatives do not apply here" where the defendant's conviction had been overturned on appeal rather than in a mistrial motion).

Because a double jeopardy claim is not triggered by the circumstances present here, the court shall deny Defendant's Double Jeopardy Motion.

### B. Alternative Holding: The Offenses are Not the "Same"

Even if a double jeopardy claim were triggered by the circumstances of Defendant's case, the claim would fail on its merits.

The test to determine whether two offenses are the "same," for double jeopardy purposes, was announced in *Blockburger v. United States*, 284 U.S. 299 (1932):

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . . A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.

284 U.S. at 304. In other words, "[t]wo offenses are not the same if one requires proof of a fact that the other does not." *Flittie v. Solem*, 775 F.2d 933, 937 (8th Cir. 1985). The court focuses on the statutory elements of the offenses, because the *Blockburger* test applies "'notwithstanding a substantial overlap in the proof offered to establish the

crimes.'" *Id.* (citing *Vitale*, 447 U.S. at 416, and quoting *Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975)).[6]

For cases involving conspiracy charges, "[t]he Double Jeopardy Clause also prohibits subdivision of a single conspiracy into multiple violations." *United States v. Petty*, 62 F.3d 265, 267 (8th Cir. 1995) (citing *Braverman v. United States*, 317 U.S. 49, 52-53 (1942)). "'A single conspiracy is composed of individuals sharing common purposes or objectives under one general agreement.'" *United States v. Morales*, 113 F.3d 116, 118-19 (8th Cir. 1997) (citing *United States v. Maza*, 93 F.3d 1390, 1398 (8th Cir. 1996). To preclude a prosecution on double jeopardy grounds, Defendant must prove that both charged offenses are the same in law and in fact. *Petty*, 62 F.3d at 267. To determine if the charges are the same conspiracy, the court analyzes the "totality of the circumstances." *United States v. Smith*, 450 F.3d 856, 860 (8th Cir. 2006). Under this totality of the circumstances test,

> the court considers the following five factors: (1) the time the conspiracies existed; (2) the identity of the conspirators involved; (3) the statutory offenses charged in the [I]ndictment; (4) the nature and scope of the activity charged; and (5) the location where the events alleged as part of the conspiracy took place.

*Petty*, 62 F.3d at 267.

The court has analyzed and compared the conspiracies charged in the Terrorism Count and the Document Fraud Count with the conspiracy in Count 1, and it finds that the charged offenses are not the "same" for double jeopardy purposes. The court finds that

---

[6] Defendant asserts that the Double Jeopardy Clause bars the instant charges because some of the evidence introduced by the government in the Michigan Proceedings will be introduced in the upcoming trial. This claim is without merit, because the Eighth Circuit Court of Appeals has long abandoned the "same evidence" test in favor of an inquiry into the "totality of circumstances" of the allegations. *United States v. Tercero*, 580 F.2d 312, 314-15 (8th Cir. 1978).

11

Count 1 charges a conspiracy that is separate and distinct from the conspiracies charged in the Michigan Indictment. Accordingly, Defendant's Double Jeopardy Motion as to Count 1 is without merit.

Moreover, the court has analyzed Count 2 and finds that it is not the same as the conspiracy counts in the Michigan Indictment. There is no double jeopardy bar to Count 2 of the instant Indictment.

## IV. DISPOSITION

For the foregoing reasons, it is hereby **ORDERED**:

(1) Defendant's Double Jeopardy Motion (docket no. 57) is **DENIED**; and

(2) The period of time between the filing of Defendant's Double Jeopardy Motion and the filing of this order is excluded from calculation under the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(F) (excluding delay resulting from the filing of any pretrial motion through the conclusion of the hearing thereon); 18 U.S.C. § 3161(h)(1)(J) (excluding "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court").

**IT IS SO ORDERED.**

**DATED** this 5th day of July, 2007.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA